# Godshalk *versus* Northampton County.

1. County auditors filed in the prothonotary's office a statement of indebtedness of the shoriff and other persons to the county; the sheriff appealed as from a report; an issue was framed on the appeal. He could not afterwards object that it was not an auditor's report, or to the form of the issue.

2. There is no prescribed form in which the auditor's report shall be made; or the accounts stated or balance shown.

3. Including in the reports of the auditors the accounts of persons not sustaining an official relation to the county, did not vitiate the finding as to those whose accounts they were authorized to audit.

4. County auditors have power to audit, settle, &c., the accounts of sheriffs, &c., and ascertain the amount of public money received by them, whether they have settled or refuse to produce their accounts.

5. The auditors in 1866 settled the accounts of the commissioners and treasurer of 1865, and allowed them credits for payments in that year to the sheriff; this was conclusive only on the accounts of the officers which were settled, and did not prevent the auditors in 1868 from ascertaining whether the sheriff had been overpaid.

6. An Act of Assembly authorized sheriffs, &c., to collect " 20 per cent. in addition to the fees allowed by law." This did not authorize adding 20 per cent. to amount allowed for subsisting prisoners.

March 22d 1872. Before Thompson, C. J., Sharswood and Williams, JJ. Agnew, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northampton county:* No. 306, to January Term 1872.

In the court below this was an appeal entered May 11th 1868, by Benjamin Godshalk, late sheriff of Northampton county, from the report of the county auditors, filed March 23d 1868. On the appeal the court directed an issue in assumpsit to be framed, in which the county of Northampton should be plaintiff and Godshalk defendant.

On the trial, January 27th 1872, before Longaker, P. J., the plaintiff gave in evidence a paper filed March 23d 1868, and claimed to be the auditor's report; the heading was as follows:—

" Statement of accounts due the county of Northampton by the persons herein named, being the amounts drawn in excess of their lawful claims, viz. :"—

Then followed charges against a number of persons, amongst the rest :—

[Godshalk v. Northampton County.]

"Benjamin Godshalk, Sheriff.

1865.   Bill and Order

| | | | | | | |
|---|---|---|---|---|---|---|
| May 5th, | No. 262, | To add. 20 per ct. on b'ding prisoners, | $11.15 |
| Aug. 21st, | " 424, | do. | do. | do. | 19.15 |
| Sept. 1st, | " 460, | do. | do. | do. | 17.00 |
| Oct. 6th, | " 544, | do. | do. | do. | 17.40 |
| Nov. 3d, | " 649, | do. | do. | do. | 20.59 |
| Dec. 1st, | " 716, | do. | do. | do. | 17.85 |

$103.14"

*        *        *        *        *        *        *

The statement concluded:—

"We the undersigned, Auditors of Northampton county, do certify, that we have examined the accounts in the commissioner's office for the years 1862, 1863, 1864, 1865 and 1866, and find the above-named persons indebted to the county as hereinbefore stated, and we hereby recommend the commissioners of said county to cause the said amounts or indebtedness to be collected (through their solicitor), and refunded to the county."

P. A. FRITCHMAN, &rbrace;
J. W. KEMMERER, &rbrace; Auditors."

February 21st 1868.          J. D. MAUGHAN,

The statement was made up from a number of distinct bills, each of which was marked "examined and approved" by the solicitor of the commissioners.

The evidence was that the defendant on the death of his predecessor had been appointed sheriff in March 1865, and continued until December of the same year.   An Act of Assembly fixed the price for boarding prisoners at 25 cents per day per prisoner.   In March 1865, a general act was passed which provided that for one year, sheriffs, &c., should have the right to collect "20 per cent. in addition to the sum total of all fees now allowed by law."   The defendant complained to the commissioners that he lost money by keeping prisoners at 25 cents per day, and they allowed the 20 per cent. additional, which he received from the county treasurer.

The sheriff was occasionally present whilst the auditors were sitting and his accounts were talked about.

There was evidence also as to the auditors having made reports for the years 1866 and 1867, and that there had been no report filed by them other than the "statement" given above; that in the previous reports the auditors had allowed the commissioners and treasurer credit for the payment of the accounts charged in the statement against Godshalk.   Godshalk had never been called on to file an account or for money due the commissioners.

The following are points of the defendant:—

"3. That the defendant as sheriff, was neither required by law to

[Godshalk *v.* Northampton County.]

render an account to the county for money received by him for boarding prisoners, neither had the county auditors any lawful power, for the purpose of affecting the defendant, to audit, settle, adjust and inquire into the receipts of any money by him through the county commissioners for boarding prisoners, and to report against him a statement of any balance due by him for any overpayments made to him for boarding said prisoners, nor have the Court of Common Pleas, on the trial of the issue in this appeal, any jurisdiction to inquire into the same subject-matter, and therefore the verdict must be for the defendant.

" 4. If the jury believe that the 20 per cent. claimed in this case, was audited, settled and adjusted by the auditors in 1866, to the account of the detailed statement of the county commissioners for the year 1865, then neither the auditors had in 1868, nor have the court now, jurisdiction over the same subject-matter on the trial of this issue, and therefore the verdict must be for the defendant.

" 5. If the jury believe that no auditor's report on the accounts of the commissioners, treasurer, sheriff and coroner, in connection with the statement charging the defendant with money due by him to the county, was filed in the Common Pleas in 1868, then the Court of Common Pleas, on the trial of this issue, has no jurisdiction of the subject-matter of plaintiff's claim against the defendant, based on said statement, and therefore the verdict must be for the defendant."

The court charged the jury that the only question for their determination was how much money, if any, was received by the sheriff over and above 25 cents per day for the board of prisoners, and for that amount your verdict will be for the plaintiff, computing interest from January 1st 1866.

The verdict was for the plaintiff for $140.38.

The defendant took out a writ of error, and assigned for error the charge of the court and the answers to his points.

*W. W. Schuyler* and *O. H. Meyers*, for plaintiff in error.—By Act 15th April 1834, § 48, Pamph. L. 545, 1 Br. Purd. 300, pl. 10, the county auditors are directed to " *audit, settle and adjust the accounts* of the commissioners, treasurer and *sheriff* and coroner of the county, and make report thereof to the Court of Common Pleas of such county, together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner."

The sheriffs' accounts not being presented to the auditors, they could not pass upon them : Commonwealth *v.* Fitler, 12 S. & R. 277. Each board of auditors could examine only the accounts of the preceding year : Northampton county *v.* Yohe, 12 Harris 305 ; Blackmore *v.* Allegheny County, 1 P. F. Smith 160.

[Godshalk *v.* Northampton County.]

*E. J. Fox* and *M. H. Jones*, for defendant in error, cited Richter *v.* Penn Township, 9 Barr 79; Blackmore *v.* Allegheny County, 1 P. F. Smith 164.

The opinion of the court was delivered, October 17th 1872, by

WILLIAMS, J.—It is clear that the commissioners had no right to pay the defendant, and he had no right to receive twenty per cent. in excess of the amount allowed by law for boarding the jail prisoners of the county. Having no right to the money he cannot in good conscience retain it, and the county is clearly entitled to recover it back. The judgment in this case, therefore, does exact justice between the parties. But if there was such error in the trial of the issue, as calls for its reversal, it is our duty to correct it. The defendant can raise no question as to his right to appeal, for it was his own act; nor as to the form of the issue, for he did not object to it. The only questions presented by the record are those which arise on the assignment of error to the refusal of the court to charge as requested in defendant's third, fourth and fifth points, and they will be considered in their order:—

1. The court was asked in defendant's third point to charge the jury in substance that the county auditors had no power to audit, settle, adjust and inquire into the receipt of any money by the defendant from the county commissioners for boarding prisoners, and to report against him any balance due him for over payments made to him for boarding said prisoners; nor has the Court of Common Pleas, on the issue in this appeal, any jurisdiction to inquire into the same subject-matter.

The court was clearly right, as we think, in refusing to give the instruction prayed for. The law makes it the duty of the county auditors to audit, settle and adjust the accounts of the commissioners, treasurer, sheriff and coroner of the county, and make report thereof to the Court of Common Pleas of the county, together with a statement of the balance due from or to such commissioners, treasurer, sheriff or coroner; and for the discharge of this duty ample power is given them to compel the attendance of the officers whose accounts they are required to adjust, and of any persons whom it may be necessary to examine as witnesses, and also to compel the production of the books, vouchers and papers relative to such accounts; and if any person in possession of such books, vouchers and papers shall refuse to produce them, or if any officer whose accounts are to be settled and adjusted by the auditors, shall refuse to attend or submit to examination, the auditors are required to proceed by the examination of witnesses and other evidence, to ascertain and settle as near as may be, the amount of public money received by such officer, and its application to public purposes or otherwise; and power is given them to compel answers from witnesses to any questions they may put touching the public

[Godshalk *v.* Northampton County.]

accounts, or the official conduct of such officers. It is manifest from all the provisions of the statute, that it is the duty of the auditors to ascertain and settle the amount of public money received by any of the officers whose accounts they are required to audit, whether they have settled or refused to produce their accounts. The power of the auditors to settle and adjust the accounts of such officers is not suspended or held in abeyance by their neglect or refusal to settle or produce their accounts. The auditors in this case, therefore, did not exceed the power given them by the statute in ascertaining and settling the amount of the public money which the defendant received for boarding the prisoners of the county, and in charging him with the sums he had received in excess of the compensation allowed by law; and making report thereof to the Common Pleas, with a statement of the balance due from him for such overpayment. If the defendant had the right to appeal, as he unquestionably had, if the auditor's report was not a nullity, then the Common Pleas had jurisdiction on the trial of the issue, to inquire into the subject-matter of the appeal.

2. The next question arises on the refusal of the court to charge as required in defendant's fourth point, that if the jury believe that the twenty per cent. claimed in this case was audited, settled and adjusted by the auditors in 1866, in the account of the detailed statement of the county commissioners for the year 1865, then neither had the auditors in 1868, nor has the court jurisdiction over the same subject-matter on the trial of this issue. The report of the auditors in 1866, if not appealed from, was conclusive, and binding on the county and the commissioners whose accounts were audited, settled and adjusted by the auditors, and the auditors in 1868 had no power to re-examine and re-settle them even if there were errors in them. But why should the settlement of the commissioners' accounts be conclusive as to the question of the defendant's accountability for the overpayments made him, even if the auditors in 1866 allowed the commissioners credit for them? The defendant was not a party to the audit, and therefore he was not bound or concluded by it, and it is clear that the county was not, and if so, there was no error in declining to charge the jury as requested.

3. The only remaining question is, whether the court erred in not charging, as requested in the defendant's 5th point, that if the jury believe that no auditor's report on the accounts of the commissioners, treasurer, sheriff and coroner, in connection with the statement charging the defendant with money due by him to the county, was filed in the Common Pleas in 1868, then the Court of Common Pleas on the trial of this issue has no jurisdiction of the subject-matter of plaintiff's claim against the defendants, based on such statement.

[Godshalk *v.* Northampton County.]

The record shows that a paper purporting to be the auditor's report, was filed in the prothonotary's office, among the records of the Common Pleas, on the 23d of March 1868, and that the defendant appealed from it on the 11th of May 1868. But it is contended that the paper from which the defendant appealed not only does not purport to be an auditor's report, but that it has not a single ear-mark of such report except that it is signed by the county auditors. If it was not a report of the auditors, why did the defendant appeal from it? The appeal is an admission that the paper filed by the auditors was their report, otherwise the defendant not being affected by it had no right to appeal. The law prescribes no particular form in which the report shall be made, nor the precise mode in which the accounts shall be stated, and the balance shown. The paper filed by the auditors as their report in this case is entitled "Statement of the amounts due the county of Northampton by the persons therein named, being the amounts drawn in excess of their lawful claims, viz. ;" and then follows among others the account against the defendant as stated by the auditors, setting out specifically and. in detail the sums with which he is charged, and showing the balance due from him, with a certificate of the auditors appended, certifying that they have examined the accounts in the commissioners' office for the years 1863, 1864, 1865 and 1866, and find the above-named persons indebted to the county as herein stated. It may be that the auditors exceeded their jurisdiction in auditing and settling the accounts of persons who never sustained any official relation to the county, and that their report in this respect is a nullity. But they had jurisdiction of the accounts of the defendant as sheriff of the county, and their settlement of other accounts not authorized by the statute did not vitiate their report as against him ; "*Utile per inutile non vitiatur.*" Whether the report as made by the auditors has the effect of a judgment is not the question arising here, but whether the auditors had the right to inquire into the accounts and official conduct of the defendant, and ascertain and settle the amounts overdrawn and received by him for boarding the prisoners of the county during the time he was sheriff; and we think they clearly had, and that their report thereof, though in some respects defective, Wilson *v.* Clarion County, 2 Barr 17, was sufficient to warrant the appeal, and give the Common Pleas jurisdiction of it.

The law and justice of the case are clearly with the county. Public officers should be held to a strict and rigid accountability, and in no case should charges for services exceeding the compensation allowed by law be sanctioned or tolerated.

Judgment affirmed.